USDC SCAN INDEX SHEET

















**JAH**   4/13/99   8:47

3:99-CR-00029   USA V. NIKKHAH

*12*

*CRTRLMEM.*

**ORIGINAL**

1  CHARLES G. La BELLA
   United States Attorney
2  MELANIE K. PIERSON
   Assistant U.S. Attorney
3  California Bar No. 112520
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California  92101-8893
5  Telephone: (619) 557-5685

6  Attorney for Plaintiff
   United States of America
7

99 APR 12 PH 4:46

BY: ).Husl   DEPUTY

8            UNITED STATES DISTRICT COURT

9           SOUTHERN DISTRICT OF CALIFORNIA

10  UNITED STATES OF AMERICA,      )    Crim. Case No. 99CR0029-HBT
                                   )
11             Plaintiff,          )    DATE:   April 20, 1999
                                   )    TIME:      9:00 a.m.
12      v.                         )
                                   )    GOVERNMENT'S TRIAL MEMORANDUM
13  KASRA NIKKHAH,                 )
                                   )
14             Defendant.          )
    _____)
15

16      COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through

17  its counsel, Charles G. La Bella, United States Attorney, Melanie K.

18  Pierson, Assistant United States Attorney, and files the attached

19  trial memorandum of facts and law relating to this case.

20

21  DATED: April ⧸2   , 1999

22                              Respectfully submitted,

23                              CHARLES G. La BELLA
                                United States Attorney
24

25

26                              MELANIE K. PIERSON
                                Assistant U.S. Attorney
27

28

I.

## STATUS OF THE CASE

A. THE CHARGES

On January 6, 1999, a federal grand jury in the Southern District of California returned a ten count indictment against defendant Kasra Nikkhah, charging him with four counts of Mail Fraud, in violation of Title 18, United States Code, Section 1341, and six counts of False Claims, in violation of Title 18, United States Code, Section 287. On April 14, 1999, the same grand jury returned an eleven count superseding indictment against the defendant, charging five counts of Mail Fraud, and six counts of False Claims.

B. TRIAL STATUS

A jury is scheduled to begin on April 20, 1999 at 9:00 a.m., before the Honorable Marilyn L. Huff, United States District Court Judge.  The estimated length of the Government's case-in-chief is one and one-half days.

C. CUSTODY STATUS

The Defendant is not in custody, having been released on his own recognizance at his arraignment on January 7, 1999.

D. JURY STATUS

No jury waiver has been filed.

E. INTERPRETER

No interpreter will be required for the defendant or any of the government's witnesses.

F. MOTIONS

On January 25, 1999, the Defendant filed motions to compel discovery and to suppress evidence from a search warrant.  On February 8, 1999, the Government filed its response, along with a motion for

1 reciprocal discovery. On February 8, 1999, Judge Turrentine reserved
2 ruling on the motions to allow the judge hearing the trial to rule on
3 the motions.  The motions are to be decided on the date that the in-
4 limine motions are to be heard, currently set for April 19, 1999, at
5 9:00 a.m.

6                                    II.

7                          STATEMENT OF FACTS

8       Defendant Kasra Nikkhah, doing business as NRG Environmental
9 Health and Safety, analyzed asbestos air samples in the kitchen of his
10 apartment at 371 Gravilla in La Jolla.  The defendant analyzed
11 asbestos air samples on a contract for the U.S. Navy, working as a
12 subcontractor for Controlled Environmental Systems, Inc. (CESI).

13       On August 4, 1995, the Navy awarded indefinite quantity asbestos
14 removal contract N63387-95-B-0143 to CESI.  Under the contract, CESI
15 was required to do various types of asbestos removal at various
16 locations for the Navy in San Diego.  Each job would be ordered and
17 invoiced separately under individual delivery orders.

18       In 1994, defendant Nikkhah hired a woman named Turkan Moinizand
19 to assist him in analyzing asbestos samples.  Moinizand was going to
20 school to become a dental technician, and worked for the defendant at
21 night.  Moinizand  completed her schooling in June, 1995, and began
22 working full time as a dental technician.  From that time forward, she
23 no longer analyzed any samples for the defendant.

24       Between June and September of 1996, on delivery orders 11, 13,
25 14, 16, 17 and 19 of the Navy contract, the defendant submitted
26 analytical reports of asbestos air sampling in which the analyst was
27 identified as "Turkan Moinizand" and which were initialed "TM".  When
28 shown these reports of analysis, Moinizand stated that she did not

perform the tests.  She stated that she knew this because she was not working for the defendant at the time and the initials were not written in her handwriting.  She did not know who, if anyone, had performed the tests that bore her name.

The mailing of checks for payment for the invoices for the delivery orders, which covered the work for which the alleged "Moinizand" analytical reports were submitted, is the basis of the mail fraud charges, while the submission of the invoices themselves is the basis for the false claims counts.

## III.

### WITNESSES AND EXHIBITS

A. WITNESSES

The Government intends to call the following witnesses to testify in its case-in-chief, but reserves the right to add or delete witnesses as suggested by the evidence presented at trial:

1. Darlene Hendrickson
2. Eugene Ellison
3. Turkan Moinizand
4. Dana Grossi
5. Ron Fuller
6. Romy Corales
7. Jim Patterson
8. Murrie Barnett

B. EXHIBITS

The Government intends to introduce the following exhibits at trial, but reserves the right to add or delete exhibits as suggested by the evidence presented at trial:

1.   Navy contract #N63387-95-B-0143

2.   CESI invoice 01, delivery order 13

3.   The asbestos air sample reports of Turkan Moinizand,
     submitted to the government under delivery order 13

4.   The check for payment for delivery order 13

5.   CESI invoice 01, deliver order 14

6.   The asbestos air sample reports of Turkan Moinizand
     submitted to the government under delivery order 14

7.   The check for payment for delivery order 14

8.   CESI invoice 01, delivery order 16

9.   The asbestos air sample reports of Turkan Moinizand
     submitted to the government under delivery order 16

10.  The check for payment for delivery order 16

11.  CESI invoice 01, delivery order 17

12.  The asbestos air sample reports of Turkan Moinizand
     submitted to the government under delivery order 17

13.  The check for payment for delivery order 17

14.  CESI invoice 001, delivery order 11

15.  The asbestos air sample reports of Turkan Moinizand
     submitted to the government under delivery order 11

16.  The check for payment for CESI invoice 001, delivery
     order 11

17.  CESI invoice 001, delivery order 19

18.  The asbestos air sample reports of Turkan Moinizand
     submitted to the government under delivery order 19

19.  The check for payment for delivery order 19

20.  Enlargement of a "Turkan Moinizand" asbestos analysis
     report

21.   Laboratory Log Book of NRG Environmental covering the
period during which the "Turkan Moinizand" reports were
allegedly analyzed

IV

LEGAL ISSUES

A. THE OFFENSES

1. False claims upon the Government

The offense of presenting false claims for payment, in violation of Title 18, United States Code, Section 287, has the following elements:

a. The defendant makes or presents a claim to a department or agency of the United States; and

b. The defendant knew at the time that the claim was made that it was false, fictitious or fraudulent.

United States v. Causey, 835 F.2d 1289, 1292 (9th Cir.1987).

The false claims charges are presented as aiding and abetting, as the claims were presented through the prime contractor to the United States, rather than by the defendant directly.  Section 2(b) of Title 18 of the United States Code provides that whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States is punishable as a principle.

As the Statutory Notes to Section 2 state, the language in 2(b) removes all doubt that one who puts in motion or cause the commission of an indispensable element of the offense by an innocent agent is guilty as a principal.  Under Section 2(b), the Government need not prove that anyone other than the defendant was guilty of the substantive crime.  Causey at 1292.  No greater knowledge requirement

1  applies to the aider and abettor than applies to the principle.
2  <u>United States v. Canon</u>, 993 F.2d 1439, 1442 (9th Cir. 1993).

3      Intent to defraud is not an element of a false claims action,
4  <u>United States v. Milton</u>, 602 F.2d 231 (9th Cir.1979), nor must the
5  government establish materiality. <u>United States v. Taylor</u>, 66 F.3d 254
6  (9th Cir. 1995).

7      If a subcontractor submitted a claim to another contractor with
8  knowledge that the other contractor would seek reimbursement from an
9  agency of the United States, that constitutes a claim upon the United
10  States.  <u>United States v. Icarus Corp.</u>, 657 F.2d 629 (4th Cir.1981).
11  Submission of a claim to the state of Louisiana, knowing that the
12  state would rely on the claim in seeking reimbursement from the
13  federal government is actionable as a false claim under Section 287.
14  <u>United States v. Beasley</u>, 550 F.2d 261 (5th Cir.1977)  The false
15  claims statute is designed to prohibit fraudulent claims made
16  involving federal funds, regardless of whether there is privity of
17  contract with the defendant.  <u>United States ex.rel. Marcus v. Hess</u>,
18  317 US 537 (1942).

19          2. <u>Mail Fraud</u>

20          The elements of the crime of mail fraud are as follows:
21  a.    The defendant knowingly devised a scheme to defraud;
22  b.    The defendant caused the mails to be used in furtherance of
23        the scheme to defraud; and
24  c.    The defendant acted with the specific intent to defraud.
25  <u>United States v. Bonanno</u>, 852 F.2d 434, 440 (9th Cir.1988).

26      Fraud may be shown by a scheme "reasonably calculated to deceive
27  persons of ordinary prudence and comprehension", <u>United States v.</u>
28  <u>Green</u>,  745 F.2d 770, 773 (9th Cir.1964), or by affirmative

misrepresentation, half truth, concealment of material facts, or deceptive use of words or written materials.   United States v. Beecroft, 608 F.2d 753, 757 (9th Cir.1979); Lustiger v. United States, 386 F.2d 132, 138 (9th Cir.1967).   Intent to defraud means to act knowingly and with the intent or purpose to deceive or cheat.   Devitt and Blackmar Jury Instruction Section 40.14 (4th Ed. 1990).

Mail fraud and wire fraud share as a common element the existence of a scheme to defraud, which, when more than one person is involved, is analogous to a conspiracy.   United States v. Lothian, 976 F.2d 1257, 1262 (9th Cir. 1992).   The defendant need not personally have done the mailing; the offense may be established where one acts with the knowledge that the prohibited actions will follow in the ordinary course of business or where the prohibited acts can be reasonably foreseen.   Lothian at 1262, citing Pereira v. United States, 347 U.S. 1, 8-9 (1954).

B. POTENTIAL EVIDENTIARY ISSUES

1.   Self-Serving Hearsay

The Defendant may attempt to prove his own statements through the testimony of another witness.   Such efforts would be impermissible because those statements are hearsay.   The Defendant cannot rely on Federal Rule of Evidence 801(d)(2) because he is the proponent of the evidence and because the evidence is not being offered against him. Rather, he is seeking to have his own self-serving hearsay statements brought before the jury without the benefit of cross examination of himself by the Government.   See United States v. Fernandez, 839 F.2d 639, 640 (9th Cir.1988).   Under Rule 801(d)(2), a statement of a party is not hearsay only when it is being offered against the party, and not when it is being offered on a declarant's behalf.

Nor can the Defendant rely on Rule 801(d)(1)(B), which provides for an exception to the hearsay rule for a statement offered to rebut a charge of recent fabrication, since such a statement is not admissible unless the defendant has already testified and has been impeached. <u>United States v. Navarro-Vareles</u>, 551 F.2d 1331, 1334 (9th Cir.1976), *cert.denied*, 429 U.S. 1045 (1977).

The only exception to the hearsay rule that could possibly permit a defendant to offer his own out-of -court statements at trial would be Rule 803(3), which excludes from the definition of hearsay a statement of the declarant's "then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain and bodily health) <u>but not including a statement of memory or belief to prove the fact remembered or believed</u>. [emphasis added]. A person's belief may not be proved by previous out-of-court statements. *See* <u>United States v. Cohen</u>, 631 F.2d 522 (5th Cir.1980), *reh'd denied*, 636 F.2d 315 (1981).

The inadmissibility of the defendant's beliefs sought to be introduced on his behalf through other witnesses is clearly prohibited by <u>United States v. Emmert</u>, 829 F.2d 805 (9th Cir.1987), a case from this District. In <u>Emmert</u>, the Ninth Circuit affirmed Judge Brewster's exclusion of testimony by a witness that the defendant told the witness that the defendant was afraid of government agents. The court, citing <u>Cohen</u> with approval, emphasized that if the reservation in the test of Rule 803(3) [excluding evidence of a statement of belief to prove the fact believed] is to have any effect, it must be understood to narrowly limit those admissible statements to declarations of condition -- "I'm scared" -- and not belief -- "I'm scared because Galkin [the undercover agent] threatened me".

2.   <u>Business Records-Hearsay Exception 803(6)</u>

The government intends to introduce records of CESI and the Navy as business records in its case in chief, pursuant to Fed. R. Evid. 803(6).   A writing is admissible under 803(6) if two foundational facts are proved: (1) the writing is made or transmitted by a person with knowledge at or near the time of the incident recorded; and (2) the record is kept in the course of regularly conducted business activity.   <u>United States v. Miller</u>, 771 F.2d 1219, 1237 (9th Cir.1985).

In some instances, the Government will introduce documents that have been incorporated into the records of other businesses or agencies.   These "incorporated" records are also admissible under 803(6) as the records of the subsequent business.   <u>Deland v. Old Republic Life Insurance</u>, 758 F.2d 1331 (9th Cir. 1985).   Where records are given to a Government agency, the records are also admissible as part of that agency's records pursuant to Rule 803(6).   <u>United States v. DeWater</u>, 846 F.2d. 528, 530 (9th Cir.1988).

V.

<u>JURY INSTRUCTIONS</u>

The Government will file its proposed jury instructions separately.

VI

<u>PROPOSED VOIR DIRE</u>

The Government requests that the court ask the following specific questions, in additional to the general voir dire of the panel:

1.   Have you, or anyone dear to you, ever worked with

1 | asbestos or in the asbestos abatement industry?

2 |         -If yes, please explain.

3 |     2.    Have you, or anyone dear to you, ever worked in a testing

4 | laboratory?

5 |         -If yes, please explain.

6 |     3.    Have you, or anyone dear to you, ever contracted an

7 | asbestos-related lung disease?

8 |         -If yes, would that affect your ability to fairly judge

9 | the evidence in this case?

10 |     4.    Have you, or anyone dear to you, ever been arrested or

11 | charged with a crime?

12 |         -If yes, is there anything about that experience that

13 | would make you question your ability to fairly judge the evidence

14 | in this case?

15 |                         VII

16 |                    STIPULATIONS

17 |     The parties have agreed to stipulate to the period of

18 | employment of Turkan Moinizand as a dental assistant to Dr.

19 | Mahooti. **Other stipulations may be offered at the time of trial.**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | )    Criminal Case No. 99CR0029-HBT |
|                 Plaintiff, | ) |
| | )    CERTIFICATE OF SERVICE |
|      v. | )    BY MAIL |
| KASRA NIKKHAH, | ) |
|                Defendant. | ) |

IT IS HEREBY CERTIFIED that:

I, Theresa M. Pinachio, am a citizen of the United States over the age of 18 years and a resident of San Diego County, California; my business address is 880 Front Street, Room 6293, San Diego, CA 92101-8893; I am not a party to the above-entitled action; and subsequent to filing with the Clerk of the Court, will deposit in the United States mail at San Diego, California, in an envelope bearing the requisite postage, a copy of Government's Trial Memorandum, addressed to Knut S. Johnson, Esq., 1010 Second Ave., Ste. 1405, San Diego, CA 92101, the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 12th of April 1999.

